STEPHEN GIFFORD

*v.*

THE PEOPLE OF THE STATE OF ILLINOIS.

1. PRACTICE IN SUPREME COURT—*reversal in criminal case.* When the evidence in a criminal case is such as to leave doubts as to the guilt of the defendant, who is convicted, this court will reverse for any error of law in the rulings of the court below.

2. EVIDENCE IN CRIMINAL CASES—*as to prior misconduct.* Evidence of prior misconduct of the accused is never admissible in a criminal trial, except to prove prior malice towards an individual, or guilty knowledge.

3. SAME—*cross-examination.* It is error to allow a witness, called to show the previous good character of one on trial for rape, to prove, on cross-examination, that he had heard people say the defendant gambled. And when the

defendant testifies in his own behalf, it is error to compel him, on cross-examination, to state that he had visited houses of ill-fame before, and the number of times, and of his having connection with their inmates, and that he had played cards for money.

4. EVIDENCE—*in rebuttal of proof of good character.* Particular acts of misconduct are never admissible, in rebuttal of proof of the defendant's good character, in a criminal case.

5. SAME—*to impeach a witness.* Nor can such evidence be received to impeach the party as a witness. This can only be done by proving his general reputation for truth and veracity to be bad.

WRIT OF ERROR to the Circuit Court of Kane county; the Hon. HIRAM H. CODY, Judge, presiding.

Mr. T. C. MOORE, and Mr. F. G. GARFIELD, for the plaintiff in error.

Mr. CHIEF JUSTICE SCHOLFIELD delivered the opinion of the Court:

This is a writ of error to the circuit court of Kane county, on a judgment convicting Stephen Gifford of the crime of rape.

The fact of sexual intercourse between the defendant and the prosecutrix, at the alleged time and place, is not in dispute. The sole controversy is whether that intercourse was without the consent and against the will of the prosecutrix.

The immaturity of the age of the prosecutrix and the advanced age of the defendant—she being only thirteen and he past sixty years of age—we have no doubt very greatly, and perhaps, to some extent, it may be said, not improperly, prejudiced the minds of the jury against the defendant. Still, this ought not to have been allowed to blind their eyes to material facts clearly proved, nor to cloud their judgments as to the proper conclusions to be drawn from those facts.

The prosecutrix testified that the intercourse was without her consent and against her will. The defendant testified that she fully consented to it.

The intercourse took place in the house of one Ravatte,

with whom both parties were then domiciled—he temporarily, and she permanently as a domestic employee. The hour was between two and three o'clock in the afternoon, and, although Ravatte and his wife were then absent at Aurora, there was a young man named Nelson, eighteen years of age, in the employ of Ravatte as a common laborer, who was at or near the house, and within easy hailing distance, throughout the entire afternoon.

Nelson testifies that he was occupied, the greater portion of the afternoon, sawing wood at the wood-pile, though he was, at one time, at the hog-pen, and, at another time, at the stable. The wood-pile, he says, was twenty-two steps from the house, the hog-pen twice and the stable three times that distance. He says he was in the front room of the house three or four times during the afternoon, and, when he would go in there, the prosecutrix and the defendant would go into the kitchen; that once, when he saw them sitting in the front room, he thought he would go in and sit with them, but the prosecutrix got up and attempted to shut the door. He heard no outcry, witnessed no weeping or evidence of distress or ill usage, but, on the contrary, testifies to several circumstances, unnecessary to be repeated, showing that the prosecutrix, instead of trying to avoid the defendant, seemed well contented in his society throughout the afternoon and evening.

The prosecutrix says she had never menstruated and had never had sexual intercourse with a man before. In this view, it severely taxes credulity that sexual intercourse by force and against her will, produced no wounding or laceration of the private parts, and was followed by no hemorrhage nor subsequent pain or ill-health. She makes no pretense that any of these results followed; and Mrs. Ravatte testifies that, on her return home in the evening, she discovered nothing in the appearance or conduct of the prosecutrix to excite her attention, and that she subsequently examined her linen "and found no evidence of any stains."

The first complaint the prosecutrix made against the defend-

ant was on Christmas, four days after the alleged offense was committed, and this was in response to a charge of improper conduct between her and the defendant, made by Ravatte. This is what she says on that point: "I first told of this on Christmas; Mr. Ravatte first spoke about it; they asked me where I got my presents; I told them; they accused me with improper conduct with Gifford; Mr. Ravatte came up stairs and talked with me; I don't remember what they said; it was because I had the presents, I suppose; Mr. Ravatte asked me if I had had anything to do with Gifford; I told him I had; I don't know what I did say; it was about noon, Christmas; I had not said anything about it to them before then; Gifford was there all the time; I had no conversation with him after he assaulted me; I spoke to him when he spoke to me; I played dominoes with him, after the affair, on Sunday evening before Christmas, the evening before I told Mr. Ravatte."

There is also other evidence in the record tending, in some degree, to show that the prosecutrix has not, at all times, given the same account of her conduct while the alleged assault was being committed upon her; but, aside from this, from the evidence to which we have made reference, we think it must be apparent to all, the guilt of the defendant of the crime wherewith he is charged is far from moral certainty; at all events, the doubt in this regard is such as to require a reversal for any error of law in the rulings of the court.

It is to be remembered the crime charged is *rape*,—not seduction, nor general lewdness,—and that the prosecutrix, when the alleged offense was committed, was of an age, in legal contemplation, to consent to an act of illicit sexual intercourse, so as to mitigate the character of the offense to that of fornication simply, or seduction, if other facts justified that charge.

Much as a man, advanced to the age in life attained by the defendant, who takes advantage of the weakness of those whom age, want of proper training, or natural depravity mark as easy victims to his lust, may deserve the severest punishment, it can not be tolerated that he shall be made to endure

punishment different than that provided by the law for the offense he commits; and he is entitled to be tried only on evidence applicable to the offense charged against him.

On the cross-examination of Prosper Washburn, a witness introduced by the defendant to prove former good character, he was asked: "Have you not heard people say that he (alluding to the defendant) was a gambler or gambled?" This was objected to, but the objection was overruled by the court, and the witness answered that he had heard some say that he gambled.

Again, when the defendant gave evidence in his own behalf, he was compelled, over his counsel's objection, to state that he had visited houses of ill-fame in Cleveland and Chicago, and the number of times, and of having had connection with their inmates; and also that he had played cards for money.

We have no doubt this evidence seriously prejudiced the defendant with the jury.

Evidence of prior misconduct is never admissible in a criminal trial unless it be to prove prior malice towards an individual, or guilty knowledge, neither of which can have pertinency in cases like the present. 1 Wharton's Criminal Law, (7th ed.) § 639; Roscoe's Crim. Evidence, (5th Am. ed.) p. 97; 1 Phillips on Evidence, (Cowen, Hill & Edwards' notes,) p. 765. And particular acts of misconduct are never admissible in rebuttal of proof of the defendant's good character. *McCarty* v. *The People*, 51 Ill. 231. Nor can it be said this evidence was admissible for the purpose of impeaching the defendant's reputation as a witness only, although not for the purpose of proving the offense charged.

The reputation of a witness can not be impeached by proof of particular acts; it must be by proving his general reputation for truth and veracity to be bad. *Frye* v. *Bank of Illinois*, 11 Ill. 367; *Eason* v. *Chapman*, 21 id. 33; *Crabtree* v. *Kile*, id. 180; *Hansell* v. *Erickson*, 28 id. 257; *Dimick* v. *Downs*, 82 id. 570.

There is no ground of which we are aware, upon which the admitting of this evidence can be sustained.

The judgment is reversed and the cause remanded.

*Judgment reversed.*