### No. 9738.

### TARLING *v.* THE PEOPLE.

Decided Jan. 10, 1921.

Plaintiff in error was convicted of the larceny of automobile tires.

### *Reversed.*

1. WITNESSES—*Cross Examination.* A wide latitude is allowed in the cross examination of witnesses upon matters which bear upon their credibility.

2.      *Defendant in Criminal Case.* When a defendant in a criminal case offers himself as a witness in his own behalf, he is subject to the general rules of examination applicable to other witnesses, including examination as to matters which tend to show him unworthy of belief.

3.     *Examination of—Discretion.* Courts regard as an abuse of discretion the admission of any evidence in a criminal case the only reasonable effect of which would be to prejudice the jury against the defendant.

4.     *Credibility—Former Conviction.* It is permissible to prove a former conviction of crime as bearing upon the credibility of a witness, but the showing must be limited to evidence of conviction. Questions as to indictment, arrest, commission of offenses or immoral acts, are not permitted.

5.     *Credibility—Impeachment—General Reputation.* In impeaching a witness the inquiry should be to his reputation for truth and veracity, rather than to his moral character, and the inquiry should go to his general character or reputation for veracity, and not to specific acts.

*Error to the District Court of the City and County of Denver, Hon. Greeley W. Whitford, Judge.*

Mr. C. A. IRWIN, for plaintiff in error.

Mr. VICTOR E. KEYES, attorney general, Mr. FORREST C. NORTHCUTT, assistant, for the people.

MR. JUSTICE TELLER delivered the opinion of the court.

PLAINTIFF in error and one Bogg were charged by information with the larceny of four automobile tires. Plaintiff in error having been granted a separate trial, was tried and found guilty.

The errors upon which he relies to reverse the judgment are: First, in the admission of incompetent evidence; and second, in the giving of an improper instruction.

The only direct evidence as to the guilt of the defendant was furnished by said Bogg, who testified directly that Tarling and he took the tires from a stolen automobile. A witness for the defendant gave testimony to the effect that Bogg had in fact stolen the tires.

The error alleged in the admission of the testimony consisted in requiring the defendant to answer the question,

"Did you ever desert from the navy?"; a question which the witness answered in the affirmative.

Counsel urges that under the 'circumstances the question was peculiarly calculated to prejudice the jury against the defendant; that the case against him being made almost entirely by the testimony of Bogg it was vitally important to the defendant that nothing be introduced in evidence, not relevant to the crime charged, which would naturally prejudice the jury.

It is elementary that a wide latitude is allowed in the cross examination of witnesses upon matters which bear upon their credibility.

It is also established that when a defendant in a criminal case offers himself as a witness in his own behalf, he is subject to the general rules as to examination of witnesses, including examination as to matters which tend to show him unworthy of belief. *McKeone v. The People,* 6 Colo. 346.

While such is the rule as to accused persons when testifying in their own defense, the courts recognize that to introduce evidence of other offenses, which do not naturally bear upon the defendant's credibility, is an abuse of that discretion which the trial court must exercise in such examinations.

A review of the cases shows that courts regard as an abuse of such discretion the admission of any evidence, the only reasonable effect of which would be to prejudice the jury against the defendant. By the common law one convicted of a crime became thereby incompetent to testify; such conviction being regarded as conclusive that he was unworthy of belief.

The correctness of that conclusion has not been accepted in modern practice, but it is recognized that one convicted of a crime may be for that reason regarded as untruthful. This is evidenced by statutes, like that of our own state, by which it is permitted to show a conviction of crime as bearing on the credibility of a witness.

The showing, however, is limited to evidence of conviction, and questions as to indictment, arrest, the commis-

sion of offenses, or immoral acts, are not permitted. *Tollifson v. The People,* 49 Colo. 219, 228, 112 Pac. 794; *Buel v. State,* 104 Wis. 132, 80 N. W. 78.

While the authorities are not in entire accord upon the question, the better rule seems to be that in impeaching a witness, the inquiry ought to be as to his credibility, his reputation for truth and veracity, rather than as to his moral character. The great weight of authority supports this rule.

In *Wilbur v. Flood,* 16 Mich. 40, 93 Am. Dec. 203, the court said:

"The rules of law do not allow specific acts of misconduct, or specific facts of a disgraceful character, to be proved against a witness by others. He may be proved * * * to have been convicted of infamous crimes, but not to have done other infamous deeds, nor to have undergone personal disgrace." To the same effect are *Drew v. State,* 124 Ind. 9, 23 N. E. 1098; *Britton v. Commonwealth,* 123 Ky. 411, 96 S. W. 556; *Gifford v. People,* 87 Ill. 210; *People v. Baird,* 104 Cal. 462, 38 Pac. 310; *Holbrook v. Dow,* 12 Gray 357; 40 Cyc. 2600.

The contrary view is based upon the theory of the kindred nature of vices. This involves the necessity for sanctioning the drawing of an inference from an inference. A witness having been shown to be dishonest, or immoral, it is inferred from that trait of character, that he is untruthful; then upon the inference that he is untruthful generally, it may be inferred that he is untruthful in the testimony which he has given. This violates the rule that an inference shall not be based upon an inference. It follows, therefore, that the impeachment should go to his general character, or reputation for veracity.

The objection to impeaching a witness by evidence of specific acts, is that all persons can be supposed ready to defend their general reputation for veracity, if attacked, but are not prepared at all times to defend as to a specific act.

To desert from the navy is a penal offense, but not rele-

vant to the crime of larceny. Had the question been asked of a witness other than the accused, the most serious result would have been the discrediting of the witness; but when asked of the accused, the prejudice aroused by it directly affected the question before the jury.

In *Britton v. Commonwealth, supra,* it was held that on a trial for murder a question to the accused whether he had not killed a man in another state constituted prejudicial error, although it was limited at the time to the question of his credibility, and he denied the killing.

In *Elliott v. The State,* 34 Nebr. 48, 51 N. W. 315, in a trial on the charge of larceny, it was held error to ask the defendant whether he had not stolen a horse in Tennessee.

In *G., C. & S. F. R. Co. v. Johnson,* 83 Tex. 628, 19 S. W. 151, it was held error for the court to require a witness, over objections of the defendant, to state that he was a deserter from the United States Army. The court said, "A witness cannot be impeached in that way." If it was error as applied to an ordinary witness, much more is it so in case the accused is the witness thus interrogated, because of the different effect of it, as above stated. It is true that the extent of cross examination of witnesses is to be determined by the trial court in the exercise of its discretion, but it has many times been held that the admission of evidence of offenses not relevant to the issue, and which is likely to prejudice the jury against the accused, is an abuse of discretion, and is, therefore, error.

In *Buel v. State, supra,* it is said:

"It is one thing to honestly ask questions on cross-examination for the purpose of discrediting a witness, and quite another to ask questions of a witness who is a party, especially in a serious criminal case, for the purpose of injuring his cause in the eyes of the jury, and leading them to believe he was likely, because of his bad character, to have committed the offense charged."

Under the circumstaces of this case, it is impossible to say that the jury was not influenced by the evidence in question.

Objection is made also to the instructions, but as the

judgment must be reversed because of the error above discussed, the instructions need not be considered.

The judgment is reversed.

CHIEF JUSTICE GARRIGUES and MR. JUSTICE BURKE concur.